Nos. 18-1669, 19-1042, 19-1043, 19-1107

# In the United States Court of Appeals for the First Circuit

**UNITED STATES OF AMERICA,**
*Appellee,*

*v.*

**MARTIN GOTTESFELD,**
*Defendant-Appellant.*

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (CRIM. NO. 16-10305)
(THE HONORABLE NATHANIEL M. GORTON, J.)*

**APPELLANT MARTIN GOTTESFELD'S PETITION FOR REHEARING
AND PETITION FOR REHEARING *EN BANC***

MICHAEL PABIAN
pabianlaw38@gmail.com
MICHAEL PABIAN LAW OFFICE, LLC
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700

*Counsel for Martin Gottesfeld*

# TABLE OF CONTENTS

**RULE 35(b)(1) STATEMENT**……………………………………………………...1

**INTRODUCTION**………………………………………………………………...2

**I.**     **The Sixth Amendment Right to a Public Trial Should Apply to Contested Hearings on Counsel's Motions to Withdraw**………………..4

**II.**    **The Court Should Grant Panel Rehearing on Two Particular Aspects of Gottesfeld's Speedy Trial Act Argument**……………..…........................10

   A.    The Panel Should Not Have Relied on the District Court's Dismissal Order to Satisfy the Statutory Requirement that the Ends of Justice Exclusions be Supported by Findings "in the Record of the Case"…10

   B.    The Panel Should Not Have Applied the Plain Error Standard of Review to Gottesfeld's Argument that the Proffered Reasons for the Ends of Justice Exclusions were Legally Insufficient………………12

# TABLE OF AUTHORITIES

**Cases**

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) .................................10

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ..............................................................8

*In re Oliver*, 333 U.S. 257 (1948) .............................................................................7

*N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286 (2d Cir. 2012).6

*Owens v. United States*, 483 F.3d 48 (1st Cir. 2007) ..................................................4

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) ......................................5, 6

*United States v. Agosto-Vega*, 617 F.3d 541 (1st Cir. 2010) ....................................4

*United States v. Alcantara*, 396 F.3d 189 (2d Cir. 2005) ......................................5, 6

*United States v. Castillo*, 981 F.3d 94 (1st Cir. 2020) .............................................14

*United States v. Huete-Sandoval*, 668 F.3d 1 (1st Cir. 2011) .......................... 11, 12

*United States v. Janik*, 723 F.2d 537 (7th Cir. 1983) ..............................................11

*United States v. Ramirez-Cortez*, 213 F.3d 1149 (9th Cir. 2000) ...........................15

*United States v. Rivera*, 682 F.3d 1223 (9th Cir. 2012) ............................................6

*United States v. Rush*, 738 F.2d 497 (1st Cir. 1984) ...............................................12

*United States v. Souza*, 749 F.3d 74 (1st Cir. 2014) ...............................................14

*United States v. Thompson*, 713 F.3d 388 (8th Cir. 2013) ........................................6

*United States v. Tigano*, 880 F.3d 602 (2d Cir. 2018) .............................................13

*United States v. Valdivia*, 680 F.3d 33 (1st Cir. 2012) ...........................................12

*United States v. Waters*, 627 F.3d 345 (9th Cir. 2010)..........................................5, 6

*United States v. White*, 920 F.3d 1109 (6th Cir. 2019)............................................15

*Waller v. Georgia*, 467 U.S. 39 (1984)........................................................... *passim*

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) .................................................4, 5

*Zedner v. United States*, 547 U.S. 489 (2006) .................................................. 11, 12

**Statutes**

18 U.S.C. § 3161 ................................................................................... *passim*

## RULE 35(b)(1) STATEMENT

The panel opinion's holding that Gottesfeld's Sixth Amendment right to a public trial was not violated breaks new ground, not only in this circuit, but nationwide.  Undersigned counsel is aware of no precedent directly addressing whether the public-trial right applies in the context of hearings on defense counsel's motions to withdraw.  It is indisputable that the Sixth Amendment guarantee extends beyond the trial itself to proceedings such as jury selection. Other jurisdictions have similarly applied the right in sentencing and bail hearings. Given the fundamental nature of an accused's right to counsel in our criminal justice system, applying the public-trial right to contested attorney withdrawal hearings would advance important interests that the right is designed to serve, such as ensuring that defendants are treated fairly and that judges carry out their duties responsibly.  Crucially, the panel's holding that the public-trial right does not apply suggests that hearings on counsel's motions to withdraw can *always* be closed.  By contrast, application of the right would still permit closures supported by specific findings of necessity.  Given the unprecedented nature of the issue and the stark consequences of the panel's ruling, this is a question of exceptional importance that should be decided by the Court *en banc*.

1

# INTRODUCTION

On February 16, 2016, the government filed a criminal complaint against Gottesfeld charging him in connection with an alleged Distributed Denial of Service attack on Boston Children's Hospital's ("BCH") computer network. *See generally* Dkt. 3-2.[1]  The attack occurred in the midst of a contentious custody dispute regarding a then-fifteen-year-old girl named Justina Pelletier.  After disagreeing with a previous diagnosis that Ms. Pelletier suffered from a mitochondrial disease and instead purportedly determining her condition to be psychological, BCH successfully sought to have Ms. Pelletier committed to the custody of the state, placed her in a psychiatric ward, and, according to multiple news reports, subjected her to a variety of serious mistreatment, characterized by some as torture.  *See* JA 1569-70; BB 5; Reply 18-19 (citing media reports).

Gottesfeld was not indicted until October 19, 2016, more than eight months after his arrest.  This delay included a period of 92 days between Gottesfeld's detention hearing and the magistrate judge's subsequent ruling.  During the

---

[1] "Dkt." refers to docket entries in district court case no. 16-CR-10305.  "BB" refers to Gottesfeld's opening brief.  "Reply" refers to Gottesfeld's reply brief in this Court.  "Add." refers to the addendum to Gottesfeld's opening brief.  "Panel Op." refers to the panel opinion.  "JA" refers to the Joint Appendix.  "SSA" refers to the Sealed Supplemental Appendix.

pendency of the detention issue, the district court purported to order three "ends of justice" exclusions of time under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(7)(A). All three motions to exclude were filed by the government in the court's miscellaneous business docket ("MBD") and represented that Gottesfeld, through counsel, assented to the exclusions. *See* JA 185-93. Each motion contained nearly identical language regarding the proffered "grounds" for exclusion: "while the defendant had his detention hearing in this district on April 27, 2016, Magistrate Judge Bowler has not yet issued a detention decision. While that decision is pending, the parties have not been able to conclude their discussions of a possible plea agreement and information." JA 186; *see also* JA 189, 192. The district court granted the motions in the MBD without any meaningful explanation of its rationale. *See* JA 175. Gottesfeld subsequently moved to dismiss the charges against him under the Speedy Trial Act. *See* Dkt. 164. The motion to dismiss was filed in Gottesfeld's criminal case and denied by the district court judge presiding over that case.

As the case against Gottesfeld proceeded, his defense counsel filed a number of motions to withdraw. In five such instances, the district court held hearings on the motions and closed the courtroom over Gottesfeld's objection. *See* SSA 9, 37,

66, 90; Add. 57.[2]  Gottesfeld personally opposed most of his attorneys' requests to withdraw.  The fifth and final closed hearing resulted in Gottesfeld's attorney being permitted to withdraw and Gottesfeld ordered, over objection, to defend himself at sentencing.  *See* SSA 94-95, 99.

## I.    The Sixth Amendment Right to a Public Trial Should Apply to Contested Hearings on Counsel's Motions to Withdraw

The parties and the panel opinion acknowledge the utterly unprecedented nature of this question.  *See* Panel Op. 26.  Undersigned counsel is unaware of any precedent directly addressing the public-trial right's applicability to attorney motions to withdraw, and the government has similarly cited no such case.

But it is clear that, despite its nomenclature, the public-***trial*** right is not limited to the actual trial itself.  The Supreme Court has applied it to both jury selection proceedings and suppression hearings.  *See Waller v. Georgia*, 467 U.S. 39, 45 (1984).  This Court has likewise made clear that jury selection must generally occur in public.  *See United States v. Agosto-Vega*, 617 F.3d 541, 547-48 (1st Cir. 2010); *Owens v. United States*, 483 F.3d 48, 61-66 (1st Cir. 2007),

---

[2] The panel found that Gottesfeld objected to "at least four" of the closures.  Panel Op. 25.  Whether Gottesfeld preserved the issue with respect to all five closures or some lesser number is immaterial: a single preserved public-trial violation would require reversal.  *See Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017).

*abrogated on other grounds by Weaver*, 137 S. Ct. at 1907.  The panel opinion treats jury selection as a mere phase of the trial, which is therefore within the facial scope of the right.  But this characterization stands in significant tension with both the Supreme Court's description of its own precedent and analysis by other federal courts of appeals.  *See Waller*, 467 U.S. at 45 ("We also have ***extended*** that right ***not only to the trial as such*** but also to the voir dire proceeding in which the jury is selected" (emphasis added)); *United States v. Abuhamra*, 389 F.3d 309, 323 (2d Cir. 2004) ("While the Sixth Amendment speaks only of a 'public *trial*,' the Supreme Court has construed this right expansively to apply to a range of criminal proceedings, including jury selection, suppression hearings, and even pre-indictment probable cause hearings." (citations omitted)); *United States v. Waters*, 627 F.3d 345, 360 (9th Cir. 2010) ("Although the Sixth Amendment refers to a 'public trial,' the right encompasses more than the trial itself. . . .  [I]t extends at least to those pretrial hearings that are an integral part of the trial, such as jury selection and motions to suppress evidence." (citations omitted)); *United States v. Alcantara*, 396 F.3d 189, 195 (2d Cir. 2005) ("The Supreme Court has held . . . that the First Amendment right of access extends beyond simply the trial phase of a criminal prosecution. . . . [T]he Court held that the public has a right to observe the examination of jurors during voir dire.").

5

Other federal courts of appeals have applied the public-trial right in additional "pretrial context[s]," Panel Op. 26, including not only suppression hearings, *Waller*, 467 U.S. at 47, but also bail proceedings and hearings on motions to dismiss, as well as sentencings and plea hearings.  *See Abuhamra*, 389 F.3d at 323 (holding that bail hearings "fit comfortably" within scope of right); *Waters*, 627 F.3d at 360-61 (applying right to "omnibus hearing," which included a "motion to dismiss the indictment for government misconduct"); *United States v. Thompson*, 713 F.3d 388, 394 (8th Cir. 2013) (finding "that public access at a sentencing hearing plays a significant positive role in its functioning and furthers the benefits sought to be afforded the accused under the Sixth Amendment"); *United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012) ("[W]e hold that the Sixth Amendment right to a public trial attaches at sentencing proceedings."); *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 297 (2d Cir. 2012) ("Our circuit has . . . held that the presumption of access applies to other aspects of criminal trials as well, including . . . pretrial suppression hearings, plea agreements and plea hearings, information on the payment of court-appointed counsel, bail hearings, live *voir dire* proceedings, and sentencing hearings." (citations omitted)); *cf. Alcantara*, 396 F.3d at 196 (observing that "the public and press have a qualified First Amendment right of access to plea proceedings and plea

6

agreements" and "[t]here is little doubt that the First Amendment right of access

extends to sentencing proceedings as well" (citing cases))[3].

Because the contours of the public-trial right are not inherently clear, its

applicability to a particular context depends on whether the underlying purposes of

the right are implicated.  "The requirement of a public trial is for the benefit of the

accused; that the public may see he is fairly dealt with and not unjustly

condemned, and that the presence of interested spectators may keep his triers

keenly alive to a sense of their responsibility and to the importance of their

functions." *In re Oliver*, 333 U.S. 257, 270 n.25 (1948) (citation omitted).  Public

proceedings "ensur[e] that judge and prosecutor carry out their duties responsibly,

. . . encourage[] witnesses to come forward and discourage[] perjury." *Waller*, 467

U.S. at 46.  The *Waller* Court found "[t]hese aims and interests" to be "no less

pressing in a hearing to suppress wrongfully seized evidence," in part because such

hearings "often are as important as the trial itself." *Id.*

 It was only **after** this discussion of the public-trial right's underlying

rationale that the *Waller* Court observed, "[i]n addition, a suppression hearing

---

[3] Although the *Alcantara* court's observations related to the First Amendment,
"there can be little doubt that the explicit Sixth Amendment right of the accused is
no less protective of a public trial than the implicit First Amendment right of the

often resembles a bench trial." *Id.* at 47. The panel opinion leads with this point, before so much as mentioning the important interests served by the public-trial right. Such heavy reliance upon the *Waller* Court's secondary observation overlooks the fact that courts have frequently applied the public-trial right to other proceedings (*e.g.*, jury selection), which self-evidently would not satisfy this criterion.

With the focus properly trained on the powerful considerations underpinning the public-trial right, it becomes clear that the present context squarely implicates those interests. There can be no doubt that the Constitutional right to counsel is fundamental to the fairness of our criminal justice system. "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. . . . Left without the aid of counsel [a defendant] may be put on trial without a proper charge, and convicted upon incompetent evidence . . . ." *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963) (citation omitted). Where, as here, an attorney moves to withdraw in a criminal case over the defendant's objection, there are three possible outcomes: (1) the attorney will be compelled to continue the representation; (2) the withdrawal will be granted forcing the

---

press and public." *Waller*, 467 U.S. at 46.

defendant to start anew with substitute counsel; or (3) the withdrawal will be granted and the defendant will be forced to represent himself.  It is of the utmost importance that the defendant be treated fairly in a proceeding with such stark consequences.  Although the issues in a withdrawal hearing may be "collateral" in the sense that they do not relate directly to an accused's guilt or innocence, Panel Op. 26, there can be no question that the results of such proceedings can have an enormous impact on the eventual determination of those ultimate questions.  Along similar lines, even if, in a strict sense, public withdrawal hearings may not "discourage[] perjury" because the attorney and defendant may not be under oath, Panel Op. 26, there is ample reason to believe the parties to such proceedings, much like trial witnesses or prospective jurors, may be more truthful and forthcoming if required to face the public.

The importance of this issue is amplified by the categorical nature of the panel's ruling.  Because it holds that the public-trial right does not apply to hearings on defense counsel motions to withdraw, the panel effectively concludes that such hearings may ***always*** occur in private.[4]  No findings regarding the

---

[4] The panel attempts to qualify its ruling somewhat by stating that the right does not apply "absent factors not present here," Panel Op. 26, but it never identifies any such factors and the opinion's subsequent reasoning is generally applicable to

necessity of the closure (which are absent from the record of this case) are

required.  Conversely, a holding that the public-trial right does apply would not

mandate that all withdrawal motions be heard in public.  Rather, closure would still

be permissible if supported by specific findings of necessity.  *See Waller*, 467 U.S.

at 45.  The panel's proffered concerns about pre-trial publicity could and should

therefore be addressed on a case-by-case basis, rather than with a blanket exception

to the general rule of public access.  After all, "[d]emocracies die behind closed

doors."  *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002).

## II.    The Court Should Grant Panel Rehearing on Two Particular Aspects of Gottesfeld's Speedy Trial Act Argument

### A.    The Panel Should Not Have Relied on the District Court's Dismissal Order to Satisfy the Statutory Requirement that the Ends of Justice Exclusions be Supported by Findings "in the Record of the Case"

The Speedy Trial Act provides that "[n]o . . . period of delay resulting from

a[n ends of justice] continuance granted by the court . . . shall be excludable . . .

unless the court sets forth, in the record of the case, either orally or in writing, its

reasons for finding that the ends of justice served by the granting of such

continuance outweigh the best interests of the public and the defendant in a speedy

trial."  18 U.S.C. § 3161(h)(7)(A).  Gottesfeld argued both in district court and

---

most, if not all, withdrawal hearings.

before the panel that the orders entered in the MBD, even assuming (as the panel found) that they adopted the reasons set forth in the underlying motions, could not satisfy this requirement because the MBD proceedings were not the same "case" as the criminal action against Gottesfeld.  *See* Dkt. 164 at 12; BB 33, 36-40.

The panel opinion avoids this issue by relying upon statements from the order, issued by a different district court judge almost two years later, denying Gottesfeld's motion to dismiss under the Speedy Trial Act.  *See* Panel Op. 9-10 & n.3.  In this respect, the panel opinion stands in significant tension with binding precedent.  "[W]hether or not the district court's order [denying the motion to dismiss] drew support from § 3161(h)(7) is of no moment, as the ends-of-justice finding must be recorded 'by the time [the] district court rules' on the motion to dismiss."  *United States v. Huete-Sandoval*, 668 F.3d 1, 5 (1st Cir. 2011) (quoting *Zedner v. United States*, 547 U.S. 489, 506-07 (2006)); *see also* Reply 7 n.4 (citing *Huete-Sandoval*); *Zedner*, 547 U.S. at 507 (holding that ends of justice provision was "not satisfied by the District Court's passing reference to the case's complexity in its ruling on petitioner's motion to dismiss"); *United States v. Janik*, 723 F.2d 537, 544-45 (7th Cir. 1983) (Posner, J.) (noting that findings not "made until the judge denied [the] motion to dismiss . . . may well" have been "too late"). The rationale underlying *Huete-Sandoval* is a sensible one: under the procedures

11

followed in the District at issue, the public findings envisioned by the Speedy Trial Act will not be recorded unless and until a defendant moves to dismiss, frustrating Congressional intent.[5]  Because the panel should not have relied upon the order denying the motion to dismiss, it should revisit the issue and decide whether the orders entered by the district court judge in the MBD satisfy the requirement that supportive findings be made "in the record of the case."

B.    <u>The Panel Should Not Have Applied the Plain Error Standard of Review to Gottesfeld's Argument that the Proffered Reasons for the Ends of Justice Exclusions were Legally Insufficient</u>

Gottesfeld argued before the panel that, even taking the motions to exclude at face value, the proffered basis for the requested exclusions, namely a stall in plea negotiations during the pendency of the detention issue, constituted a legally insufficient basis for continuance.  *See* BB 31-36.  The panel opinion characterizes this argument as "appear[ing] for the first time on appeal" and, accordingly,

---

[5] *Huete-Sandoval* clearly interpreted *Zedner*'s statement that the findings must be recorded "by the time [the] district court rules" on the motion to dismiss to mean that recording must occur prior to the dismissal ruling.  668 F.3d at 5 (quoting *Zedner*, 547 U.S. at 506-07).  Accordingly, the panel opinion's citation to nearly identical language in *United States v. Valdivia*, 680 F.3d 33, 39 (1st Cir. 2012), does not support its analysis.  The only other case cited by the panel opinion on this point is *United States v. Rush*, 738 F.2d 497, 507 (1st Cir. 1984), a decision that pre-dated *Zedner* by decades and involved the district court's mere "elaborat[ion]" on findings previously made in the same case.

reviews it only for plain error.  Panel Op. 7, 10.

There can be no question that Gottesfeld challenged the validity of the ends of justice exclusions in district court.  *See* Dkt. 164 at 11-13; Reply 2.  Gottesfeld's motion to dismiss under the Speedy Trial Act focused on (a) the lack of findings supporting the district court judge's orders granting the motions for exclusion and (b) the fact that those orders were entered in the MBD, not in Gottesfeld's criminal case.  Because the judge made no specific findings at all, Gottesfeld could hardly be faulted for failing to expressly challenge the substantive sufficiency of those unexpressed findings.  Even so, Gottesfeld's motion did, in discussing Fed. R. Crim. P. 48(b)(1), take the position that "time spen[t] in plea bargaining is a gamble taken by the government regarding the defendant's speedy trial rights and is properly counted against the government."  Dkt. 164 at 18 (quoting *United States v. Tigano*, 880 F.3d 602, 615 (2d Cir. 2018)).  Gottesfeld also quoted the relevant portion of the motions to exclude, clearly indicating that plea negotiations were not active but rather stalled pending the magistrate judge's detention ruling.  *See, e.g.*, *id.* at 7.

The government, in opposing Gottesfeld's motion, contended that the district court judge granting the exclusions had "adopted" the grounds set forth in the motions themselves, namely that the lack of a detention ruling "was a barrier to

13

plea negotiations." Dkt. 167 at 13-14. The government included in its opposition a section entitled "Plea Negotiations are a Valid Ground for Exclusion," inviting the district court to "reject Gottesfeld's argument (under Fed. R. Crim. P. 48(b)(1)) that 'plea bargaining is a gamble taken by the government regarding the defendant's speedy trial rights . . . .'" *Id.* at 15 (citation omitted).

With the issue now squarely on the table, Gottesfeld's district court reply expressly stated that "plea negotiations are *not* a statutorily authorized exclusion for delay. In fact, the [government's] opposition notes that the First Circuit has 'expressly left open the issue of whether periods of plea negotiation can be excluded'" under the ends of justice provision. Dkt. 176 at 7 (quoting *United States v. Souza*, 749 F.3d 74, 80 (1st Cir. 2014)). This issue was the subject of "a division among the circuits." *Id.* at 8. The reply also added that "only thirty [days] . . . of the excessive . . . delay in the detention decision may be excluded" under the statutory subsection for matters under advisement. *Id.*; *see also* Reply 2-3 (citing relevant portions of district court reply).

The foregoing provided the district court "with sufficient specificity such that" it was, without question, "aware of the claimed error." Reply 3 (quoting *United States v. Castillo*, 981 F.3d 94, 101 (1st Cir. 2020)). Indeed, the district court explicitly held that the parties' "plea negotiations . . . served to justify the

interest of justice exclusions." Add. 34; *see also* Add. 11 ("The plea negotiations . . . appropriately fit within the ends of justice exclusion."). The court noted that the issue presented an open question in this circuit but that "[o]ther courts have accepted plea negotiations as a valid rationale for an ends-of-justice continuance." Add. 34. And the district court clearly understood the dormant status of negotiations at the time the motions were filed and granted. *See* Add. 33 ("The third, fourth and fifth motions make clear that the parties ***agreed to wait*** for the detention decision of the magistrate judge before resuming plea negotiations." (emphasis added)).

Given that whether plea negotiations can support an ends of justice continuance remains an open question in this circuit, the panel opinion's finding of forfeiture proved determinative in its resolution of the issue. *See* Panel Op. 11. There is currently a circuit split regarding whether active plea negotiations are grounds for continuance. *Compare United States v. Ramirez-Cortez*, 213 F.3d 1149, 1155 (9th Cir. 2000), *with United States v. White*, 920 F.3d 1109, 1116 (6th Cir. 2019). Because Gottesfeld preserved the issue, this Court should address the circuit split.

Moreover, in order to rule in favor of the government, the Court must take the additional step of holding that plea negotiations ***suspended*** due to the court's

delay in deciding a motion constitute permissible grounds for a continuance. Undersigned counsel is aware of no precedent supporting this conclusion. Such a ruling would stand in significant tension with other subsections of the Speedy Trial Act, including the express provision that "general congestion of the court's calendar" cannot support continuance. 18 U.S.C. § 3161(h)(7)(C). In observing that "it is not *obvious* that congestion is the *only* available explanation for the delay" at issue here, Panel Op. 12-13 (emphasis added), the panel effectively reversed the statutory burden. It was the district court's responsibility, not Gottesfeld's, to ensure that the record reflected findings sufficient to support the exclusions. Along similar lines, the Speedy Trial Act provides an automatic exclusion for matters "under advisement by the court," which is capped at "thirty days." 18 U.S.C. § 3161(h)(1)(H). An ends of justice continuance may permit a longer delay, but only when supported by the requisite findings. A mere representation that the parties are waiting for a ruling from the court, absent any information about, *e.g.*, the complexity of the pending issue, should not in itself be sufficient to justify a longer exclusion. Otherwise, the ends of justice provision could render the general 30-day exclusion created by Congress largely meaningless.

16

Respectfully submitted,
Martin Gottesfeld
By his Attorney,

**/s/ Michael Pabian**
Michael Pabian
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700
pabianlaw38@gmail.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1.     This document complies with Fed. R. App. P. 35(b)(2)(A) and

40(b)(1) because, excluding the parts of the document exempted by Fed. R. App.

P. 32(f), the document contains 3,766 words.

2.     This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because the document has been prepared in a proportionally spaced typeface using

Microsoft Word 2016 in Times New Roman, 14-point font.

**/s/ Michael Pabian**
Michael Pabian

Dated:  November 18, 2021

## CERTIFICATE OF SERVICE

I, Michael Pabian, hereby certify that on this 18th day of November 2021, this Petition for Rehearing was filed with the Court through its CM/ECF system, thus effectuating service on all parties to this appeal.

**/s/ Michael Pabian**
Michael Pabian

Dated:  November 18, 2021